<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LURLINE MCLEAN, on behalf of herself and all others similarly situated, | Civil Action No. 15-8974(SDW)(LDW) |
| Plaintiff, | **OPINION** |
| v. | |
| HSBC FINANCE CORPORATION, | October 3, 2016 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is Defendant HSBC Finance Corporation's ("HSBC" or "Defendant") motion to compel the arbitration of Plaintiff Lurline McLean's ("Plaintiff" or "McLean") individual claims and staying this action pending the completion of arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1-14. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendant's motion to compel arbitration.

### I. BACKGROUND AND PROCEDURAL HISTORY

In July 2006, Plaintiff Lurline McLean obtained a loan from Household Finance Corporation III ("HFC III") secured by a mortgage on her then primary residence. (Am. Compl., Dkt. No. 9 at 1, ¶ 1). In connection with the mortgage, Plaintiff signed a "First Mortgage Loan Repayment and Security Agreement ("Agreement" or "Mortgage Agreement"), dated July 28, 2006. (*See* St. Clair-

Hougham Decl., Ex. B, Dkt. No. 8-4 at 5).[1] Attached to the Mortgage Agreement was an Arbitration Rider ("Rider" or "Arbitration Rider"), which states, in part, that either party "may request that any claim, dispute, or controversy…arising from or relating to this Agreement or the relationships which result from this Agreement…shall be resolved, upon the election of you or us by binding arbitration pursuant to this arbitration provision…"[2] (*See* St. Clair-Hougham Decl., Ex. C, Dkt. No. 8-5 at 1.) The Rider further states that "No class actions…are permitted in arbitration without the written consent of the parties" and in bold-face all-capital letters that "**THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**" (*Id*. at 2.) Both Plaintiff and HFC III signed this Rider on July 28, 2006. (*Id*. at 3.)

In December 2015, Plaintiff filed a six-count complaint "on behalf of herself and all others similarly situated" against Defendants Household Finance Corporation International, Household

---

[1] After Plaintiff filed her Amended Complaint, Defendant failed to refile the supporting Declaration and Exhibits that were filed in support of the first Motion to Compel. Where necessary, this Court will refer to attachments included with the first Motion to Compel.

[2] The full text of this portion of the Rider reads as follows: "This Arbitration Rider is signed as part of Your Agreement with Lender and is made part of that Agreement. By signing this Arbitration Rider, you agree that either Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present, or future), including initial claims, counter-claims, cross-claims, and third-party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity and enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed." (*See* St. Clair-Hougham Decl., Ex. C, Dkt. No. 8-5 at 1.)

Finance Corporation II, and Household Finance Corporation III (collectively, "HFC Defendants").[3] (*See* Compl., Dkt. No. 1 at 1.) All three HFC Defendants are identified as subsidiaries of HSBC Holdings, PLC.[4] (*See id*. at 2, ¶¶ 2-4.) Plaintiff claimed that the HFC Defendants engaged in wrongful conduct by offering two trial period loan modification plans in 2010 and 2011 wherein the HFC Defendants represented they would provide Plaintiff and the purported Class with permanent modifications to their loans if they made all payments required under the offered plans. (*See id*. at 2, ¶ 5.) Plaintiff alleged that although she and members of the Class accepted these purported offers and performed their material obligations under the plans, the HFC Defendants failed to honor their promise. (*See id*.)

In response to the Complaint, the HFC Defendants moved to compel arbitration on March 14, 2016, citing the aforementioned Mortgage Agreement and Arbitration Rider. (*See* HFC Defs.' Mot. to Compel, Dkt. No. 8.) On March 31, 2016, Plaintiff filed an Amended Complaint naming HSBC Finance Corporation ("HSBC"), a non-signatory to the Mortgage Agreement and Rider, as her sole defendant.[5] (*See* Am. Compl., Dkt. No. 9) Although Plaintiff included additional background facts regarding the state of the housing market in the United States during the relevant time period, the Amended Complaint otherwise appears to mirror the original Complaint and contains six counts identical to those in the original Complaint. (*See id*.) In response to the Amended Complaint, HSBC filed the instant motion.

---

[3] The HFC Defendants averred that there is no known entity by the name of "Household Finance Corporation International." (*See* HFC Defs.' Mot. to Compel, Dkt. No. 8 at 1 n.1.)

[4] The HFC Defendants also filed a Corporate Disclosure Statement indicating that HFC II and HFC III are indirect wholly-owned subsidiaries of HSBC Finance Corporation, which is indirectly owned by HSBC Holdings plc. (*See* HFC Corp. Disc. Statement, Dkt. No. 4; *see also* HSBC Corp. Disc. Statement, Dkt. No. 16.)

[5] Defendant HSBC consented to the filing of this Amended Complaint *nunc pro tunc*. (*See* Stipulation, Dkt. No. 14).

**II. LEGAL STANDARD**

The Federal Arbitration Act ("FAA") was enacted to ensure the enforcement of private arbitration agreements. *See, e.g.*, *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344-45 (2011) (noting that "our cases place it beyond dispute that the FAA was designed to promote arbitration"); 9 U.S.C. § 2 (2015) (providing that written arbitration agreements "shall be valid, irrevocable, and enforceable"). "When a district court is presented with a motion to compel arbitration, it must answer the following two questions: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement." *Ellin v. Credit One Bank*, No. 15-2694, 2015 WL 7069660, at *2 (D.N.J. Nov. 13, 2015); *see also Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 525 (3d Cir. 2009). To conduct its inquiry, the court applies "ordinary state-law principles that govern the formation of contracts."[6] *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The Supreme Court of the United States has recognized that arbitration agreements may be enforced by or against non-signatories through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed.2001) (internal quotation marks omitted); *see also Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014); *Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174, 188 (2013). The doctrine of equitable estoppel "may be invoked in the interests of justice, morality and common fairness." *Sicily by Car S.p.A. v. Hertz Glob. Holdings, Inc.*, No. 14-6113, 2015 WL 2403129, at *5 (D.N.J. May 20, 2015) (quoting *Hirsch*, 215 N.J. at 188-9).

---

[6] The parties appear to agree that New Jersey law applies to the contracts at issue. (See, e.g., Pl.'s Opp'n. Br., Dkt. No. 19 at 11-12, 21; Def.'s Br., Dkt. No. 18-1 at 12-13.)

**III.     DISCUSSION**

<u>*Validity of Arbitration Agreement*</u>

Plaintiff argues that HSBC, as a non-signatory to the Rider signed by HFC III and McLean, has no standing to compel Plaintiff to arbitrate her claims. (Pl.'s Opp'n. Br., Dkt. No. 19 at 11). However, the doctrine of equitable estoppel dictates that Plaintiff's claims proceed to arbitration. "To establish that equitable estoppel applies, the party invoking it must demonstrate that the opposing party engaged in conduct, either intentionally or under circumstances that induced reliance, and that the moving party acted or changed its position to its detriment." *Sicily by Car*, 2015 WL 2403129, at *5 (quoting *Hirsch*, 215 N.J. at 188-9) (internal brackets and quotation marks omitted).

Here, Plaintiff brings claims that arise out of her Mortgage Agreement, yet, to HSBC's detriment, seeks to avoid the Arbitration Rider from that Agreement and force HSBC to defend against those claims in Court. Plaintiff appears to argue that the letters she received regarding loan modification plans represent contracts that are wholly separate from her Mortgage Agreement and Arbitration Rider, and the parties are merely "intertwined" with Plaintiff's claims. (*See* Pl.'s Opp'n. Br., Dkt. No. 19 at 14). This assertion is not supported by the facts. Rather, Plaintiff's entire relationship with HSBC arises out of the Mortgage Agreement, as do the letters that allegedly offered to modify that Mortgage Agreement and form the basis for Plaintiff's claims. The letters and the loan modification plans they contain only exist by virtue of the loan they purport to modify, which is governed by the Mortgage Agreement and Arbitration Rider.[7] In fact, the letters at issue

---

[7]     To the extent Plaintiff suggests that the Arbitration Rider was not incorporated into the Mortgage Agreement, this Court finds this argument to be meritless. Plaintiff does not dispute that she signed the Rider contemporaneously with her Mortgage Agreement. Under New Jersey contract law, "instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction will be construed as a single instrument." *Brown-Hill Morgan, LLC v. Lehrer*, 2010 WL 3184340 at *8 (N.J. Super. Ct. App. Div. 2010), cert. denied, 205 N.J. 183, 13 A.3d 1290 (2011).

5

explicitly state that the terms of the "existing loan agreement that are not modified by the Plan remain in effect during the Plan period." (*See* McLean Decl., Ex. A, Dkt. No. 8-3.)

Notwithstanding Plaintiff's presentation of her Complaint as a separate tort action against a party who is not a signatory to her Arbitration Rider, Plaintiff has placed the Mortgage Agreement, and thus, the Rider "squarely at issue" here. *See Sicily by Car*, 2015 WL 2403129, at *5. Plaintiff may not avoid the terms of the Arbitration Rider she signed merely by replacing the signatory to that Rider with its non-signatory parent company when her claims continue to arise entirely out of the same contract.

*Scope of the Arbitration Agreement*

Plaintiff alleges that there was no "meeting of the minds" as to the scope of the Arbitration Rider. (Pl.'s Opp'n. Br., Dkt. No. 19 at 24, 27.) The Third Circuit has instructed that "[i]n determining whether the particular dispute falls within a valid arbitration agreement's scope, there is a presumption of arbitrability: an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Century*, 584 F.3d at 524 (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, (1986)) (internal brackets and quotation marks omitted). Here, the Arbitration Rider Plaintiff signed in conjunction with her Mortgage Agreement clearly states that *any* dispute arising from the Mortgage Agreement could be subject to binding arbitration at either parties' election. A reasonable person could and likely would interpret this broad language to include a dispute regarding a proposed modification of that Agreement. This Court therefore finds that this dispute falls within the scope of the Arbitration Rider.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Compel Arbitration is **GRANTED**. An appropriate order follows.

___/s/ Susan D. Wigenton_____<br>SUSAN D. WIGENTON, U.S.D.J.

cc: Clerk
 Parties
 Magistrate Judge Leda D. Wettre